UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| Hustler Cincinnati, Inc. | : | |
| 411 Elm St. | | Case No.: 1:11-cv-718 |
| Cincinnati, OH 45202, | : | |
| | | Judge |
| and | : | |
| | | |
| Jimmy R. Flynt | : | |
| c/o Robert W. Hojnoski, Esq. | | |
| REMINGER CO., L.P.A. | : | |
| 525 Vine St., #1700 | | **COMPLAINT FOR LEGAL** |
| Cincinnati, OH 45202, | : | **MALPRACTICE, TORTIOUS** |
| | | **INTERFERENCE WITH** |
| Plaintiffs, | : | **BUSINESS, CONTRACTUAL &** |
| | | **EXPECTANCY INTERESTS,** |
| vs. | : | **AND MONEY DAMAGES** |
| | | |
| Paul J. Cambria, Jr., Esq., Jonathan | : | (JURY DEMAND ENDORSED |
| Brown, Esq., Jeffrey Reina, Esq., | | HEREON) |
| Michael Deal, Esq., Joseph | : | |
| Gumkowski, Esq., and Lipsitz Green | | |
| Scime Cambria LLP | : | |
| 42 Delaware Ave., Suite 120 | | |
| Buffalo, NY 14202-3924, | : | |
| | | |
| Defendants. | : | |
| | : | |

\*\*\*\*\*\*\*\*\*\*

Plaintiffs Hustler Cincinnati, Inc. ("HCI") and Jimmy R. Flynt ("Jimmy") (collectively "Plaintiffs"), through counsel, for their Complaint, state as follows:

**PARTIES / JURISDICTION / VENUE**

1. Plaintiff Hustler Cincinnati, Inc. is an Ohio Corporation with its principal place of business at 411 Elm Street in Cincinnati, Ohio. Hustler Cincinnati was incorporated on March 28, 2000 and at all relevant times has been the on paper

operating entity of the Hustler Cincinnati retail store located at 411 Elm Street in Cincinnati, OH. Hustler Cincinnati, Inc. is the successor-in-interest to Hustler News & Gifts, Inc. ("HNG"), formerly an Ohio Corporation.

2. Plaintiff, Jimmy R. Flynt is a natural individual and is currently a resident of Nevada.

3. Jimmy is and has been the sole shareholder/owner of HCI. Jimmy was the sole shareholder of HNG.

4. Defendants Paul J. Cambria, Jr., Michael Deal, Esq., Jonathan Brown, Esq., Jeffrey Reina, Esq., and Joseph Gumkowski, Esq. (at times, individually referred herein by their last names only, and, at times, collectively referred to herein as "Defendants" or "Defendant Attorneys") are residents/citizens of New York and are licensed attorneys in New York. Defendants Cambria and Brown are additionally licensed to practice law in California state and federal courts. Cambria is licensed to practice law in the U.S. District Court for the Northern District of Ohio as well as the Sixth Circuit. Defendant Cambria has practiced law in Ohio on numerous other occasions through *pro hac vice* admissions. Defendant Deal is additionally licensed to practice law in Ohio. Defendant Lipsitz Green Scime Cambria, LLP ("Lipsitz Green") is a professional law firm and limited liability partnership organized under the laws of New York. Lipsitz Green transacts regularly conducts business in Ohio. Defendant Cambria is a senior partner and on the management committee of Lipsitz Green. Defendants Deal, Brown, Reina, and Gumkowski are partners of Lipsitz Green. Each of these defendant attorneys have rendered legal advice and services to Plaintiffs in Ohio and/or

related to contracts, real estate and business activities in Ohio. Defendant attorneys have committed tortious acts toward Plaintiffs in and/or related to Ohio.

5. This Court has subject matter jurisdiction based on diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332.

6. Venue is proper in this jurisdiction pursuant to 28 U.S.C. 1391(a)(1)-(3).

## **GENERAL FACTUAL ALLEGATIONS**

7. Defendant Cambria first formed an attorney-client relationship with Jimmy in Ohio in the mid 1970's. Cambria represented Jimmy in connection with criminal obscenity charges in Cleveland and Cincinnati arising out of the publication of Hustler magazine.

8. Cambria again provided legal representation to Jimmy in connection with criminal obscenity charges in Hamilton County, Ohio between 1998-1999 and again in 2003-04. These charges were levied against Jimmy and his brother, Larry Flynt and related to the alleged business activities of the newly opened Hustler retail store at 34 E. Sixth Street in downtown Cincinnati, which Jimmy owned and operated through HNG. Cambria and other attorneys and staff in his firm represented Jimmy. Larry was represented by separate counsel based out of California. Attorney Lou Sirkin served as local counsel for Jimmy and for HNG.

9. Between 1998 and 2009, Cambria and Defendant attorneys provided legal services, advice and representation to Jimmy in connection with his business ownership and operation of Hustler Cincinnati, Inc. to include its predecessor-in-interest, Hustler News & Gifts, Inc.

10. Between 2000 and approximately 2009, Cambria, Gumkowski and Defendant attorneys provided legal services, advice and representation to Jimmy in connection with the business activities and operations of the Hustler Hollywood store in Monroe, Ohio – owned and operated through HH-Monroe, Inc., f/k/a Hustler Hollywood of Ohio, Inc. ("HH Monroe"), an Ohio corporation incorporated in 2000. Jimmy was the sole owner/shareholder/director/officer of this entity between 2000 and 2005.

11. Cambria, Gumkowski and/or Defendant attorneys provided legal services, representation and advice to Jimmy in connection with his business activities and operations of HH Monroe, to include his business operations, contractual relations, dealings and rights.

12. Cambria, Gumkowski and Defendant Attorneys provided legal advice and representation to Jimmy in connection with purported "lease" and "licensing" agreements related to HH-Monroe in or around 2001. Jimmy was not explained all of his options nor was he explained the potential negative effects or consequences of the documents he was being directed to executed by Defendant attorneys. Defendant attorneys represented both sides to these various documents/contracts. Jimmy reasonably believed that his interests were being protected and advanced. Cambria, Gumkowski and/or Defendant attorneys breached their duties to Jimmy related to these transactions causing injury and economic loss to Jimmy well in excess of $75,000.

13. Cambria, Gumkowski and Defendant Attorneys further provided deficient and improper legal advice to Jimmy in connection with Jimmy's purported sale of the stock of HH Monroe to Hustler Entertainment, Inc. in or around 2004-05. Jimmy was not properly advised to his rights and options and relied to his detriment on Defendant

4

attorneys to properly advance and protect his interests. Instead, Jimmy was improperly directed to transfer stock worth millions of dollars for no consideration. Defendant attorneys breached their duties to Jimmy causing damage/loss related to Jimmy's transfer of the HH Monroe stock.

14. Between 2000 and 2009, Cambria and/or Defendant attorneys provided legal advice and guidance to Jimmy with respect to Jimmy's business dealings, employment and/or relationship with Jimmy's brother, Larry Flynt. Jimmy reasonably relied on Cambria and Defendant attorneys to properly advise him and to protect and advance his rights. Defendants breached their duties to Plaintiffs and caused damages in excess of $75,000.

15. In the mid 2000's, Cambria provided legal advice, counsel, representation and services to Jimmy/HCI in connection with a piece of real property located at 411 Elm Street in Cincinnati, Ohio. Jimmy/HCI purchased that property from a third party in 2001. Between 2004 and 2006, Cambria and Defendant attorneys advised and counselled Jimmy with respect to the transfer/sale and subsequent lease back of that property to Elm 411, LLC, an entity owned/controlled by Larry Flynt. Jimmy/HCI did not want to transfer this property but did so based on advice, legal counsel and direction from Cambria and Defendant attorneys. Cambria and Defendant attorneys had a duty to properly advise Jimmy/HCI as to their legal rights and options in connection with this real estate. Cambria, Gumkowski and Defendant attorneys directed and orchestrated HCI's transfer/sale and lease back of this property. Jimmy/HCI believed that their interests were being advanced and protected. Cambria, Gumkowski and Defendant attorneys drafted the legal documents/contracts related to this transaction and

5

otherwise provided advice and direction to Jimmy/HCI. Cambria, Gumkowski and Defendant attorneys acted as counsel for both parties/sides to this transaction; did not obtain a conflict waiver and did not advise Jimmy or HCI as to their conflict of interest, lack of objectivity, lack of impartiality and lack of independence. Jimmy/HCI relied to their detriment on the advice and guidance of Cambria and Defendant attorneys to transfer legal title to the 411 Elm Street property. Jimmy/HCI further relied on Cambria and Defendant attorneys to draft the required documentation, including the Purchase Agreement and Lease in a manner that was fair and reasonable to Jimmy/HCI. Defendant attorneys breached their duty and caused harm/damage to Jimmy/HCI.

16. Cambria and/or Defendant Attorneys may have failed to ensure that all of the required documentation related to the transfer/lease of the 411 Elm Street property were properly executed and/or preserved/retained so as to protect HCI/Jimmy's property interests and rights.

17. Cambria, Gumkowski and one or more of the other Defendant attorneys provided legal advice, representation and services to Jimmy/HCI with respect to monetary transfers from HCI, in Cincinnati, to L.F.P., Inc., a California Corporation, beginning in late 2004/early 2005. These transfers were made between early 2005 and the Spring of 2009. Cambria acted as counsel for Jimmy/HCI as well as LFP/Larry in connection with these transfers. Cambria did not request conflict of interest waivers, did not disclose his conflict of interest and did not act in Jimmy or HCI's best interests. Jimmy/HCI was directed by Cambria, Gumkowski and Defendant attorneys to make these transfers but was not properly explained their options, rights, or the potential consequences of making such transfers.

18. Between 1998 and 2009, Cambria and Defendant attorneys failed to properly advise, counsel and guide Jimmy and HCI as to their trademark and intellectual property rights with respect to use of the HUSTLER name/mark, in connection with retail services in downtown Cincinnati, through HNG and HCI. Cambria failed to advise Jimmy and HCI that they would potentially jeopardize and/or lose their rights to the HUSTLER name/mark by making monetary transfers to LFP, docketed on HCI's financial books and tax returns, as "licensing fees." These transfers were directed by Cambria and Defendant Attorneys without full and proper disclosure as to the legal implications. Cambria and Defendant attorneys breached their duties and caused harm/damage.

19. Between 2000 and 2009, Cambria and Defendant Attorneys failed to protect Jimmy's property rights and interests in connection with the various Hustler retail stores that were opened across the country. Jimmy reasonably relied on Cambria and Defendant attorneys to protect, advance and preserve his interests. Jimmy reasonably believed that he had an ownership interest in the various Hustler retail stores and relied on Cambria and Defendant attorneys to properly document and protect same. Defendant attorneys breached their duties to Jimmy causing him significant harm/loss.

20. In or around 1999, Jimmy coined the phrase/motto: "Relax…it's just Sex." Defendant attorneys failed to adequately and properly protect Jimmy's property rights related to this phrase/slogan.

21. Between 2000 and 2009, Cambria and Defendant attorneys failed to properly advise Jimmy with respect to legal rights in connection with Jimmy's employment with Larry and/or one or more entities within the HUSTLER Enterprise, to

7

include HH-Monroe, L.F.P., Inc. and/or Flynt Management Group, LLC. Defendant attorneys created documents and forms and asked/advised Jimmy to sign them without fully explaining them to him. Defendant attorneys did not properly advise Jimmy as to his rights and to not seek to protect or advance Jimmy's interests. Cambria and Defendant attorneys made false and misleading representations, directly and/or indirectly, to Jimmy with respect to his employment relationship and rights.

22. Cambria, Gumkowski and/or Defendant Attorneys participated in and/or were complicit with an attempted scheme to fraudulently obtain more than $400,000 from HCI/Jimmy at the request of Larry in April of 2009, to include the drafting of a fraudulent promissory note which violated Ohio's securities laws.

23. After Jimmy/HCI refused to comply with the fraudulent loan request, Cambria, Deal, Reina, Brown and Defendant attorneys wrongfully threatened and/or initiated an eviction against Jimmy/HCI in April/May of 2009 in Hamilton County, Ohio related to HCI's tenancy at 411 Elm Street in downtown Cincinnati. Defendants had a conflict of interest in initiating this action which was in violation of Defendants' duties to Plaintiffs. Defendant Attorneys are the ones who initially orchestrated and drafted the various documents related to HCI's tenancy at 411 Elm Street in 2004-2006. Yet, in May of 2009, Defendant Attorneys initiated adverse action against HCI related to HCI's leasehold rights. Defendant attorneys improperly used or attempted to use information obtained from HCI/Jimmy in the course of previous representation to adversely impact Jimmy/HCI's legal rights.

24. Beginning in mid 2009, Cambria, Brown, Reina and Defendants wrongfully devised a scheme to threaten, initiate and pursue a trademark infringement action

8

against HCI/Jimmy related to HCI's use of the HUSTLER name/mark in retail services in downtown Cincinnati. Defendants had a conflict of interest in connection with such actions considering that Cambria, Gumkowski and Defendant attorneys previously provided legal advice and representation to Jimmy/HCI related to HCI's business operations, use of the Hustler name/mark, and the transfer of monies from HCI to LFP to be docketed on HCI's books as "licensing fees." Defendant attorneys breached their duties to Jimmy/HCI and caused harm.

25. Cambria, Gumkowski and Defendant attorneys provided deficient and improper legal advice to Jimmy in connection with Jimmy's ownership and operation of HH-Monroe, Inc. between 2000 and 2005, resulting in Jimmy divesting himself of legal rights and millions of dollars in assets without consideration.

26. Upon information and belief, Defendants may have spoliated and/or destroyed documents and/or failed to properly preserve documents and information which have impaired HCI's and Jimmy's legal rights, including communications and documents related to Jimmy's business/ownership interests, employment rights, leasehold rights, trademark rights and other property rights.

27. Cambria and Defendant Attorneys failed to properly advise Jimmy/HCI with respect to protection and preservation of their business interests and assets, to include property and/or trademark rights.

28. In early to mid 2009, Cambria, Reina, Brown, and Defendants wrongfully took action, in conflict of interest, which led to the wrongful termination of Jimmy from his employment with Larry/HUSTLER/LFP/FMG.

29. Upon information and belief, Cambria and Defendant Attorneys began taking adverse action against Jimmy in 2009 in a concerted and malicious effort to squeeze/push Jimmy out of the Hustler Enterprise so as to create the opportunity for Cambria and the Lipsitz Green firm to have increased power and control of the Hustler Enterprise, to protect their retainer agreement and yearly revenue stream and to otherwise increase the likelihood of increased revenues and professional fees in the years to come.

30. As a result of Defendants breach of duties to Plaintiffs, to include taking adverse action against Plaintiffs while having conflicts of interest, Jimmy/HCI has been forced to incur significant legal fees and expenses well in excess of $75,000 in connection with an ongoing eviction action in the Hamilton County Court of Common Pleas, *Hustler Cincinnati, Inc. vs. Elm 411, LLC*, and an ongoing trademark-related action in this Court, *LFP IP, LLC vs. Hustler Cincinnati, Inc., et al*. Both of these ongoing actions are the direct and proximate result of Defendants breach of duties to Plaintiffs. The trademark action alleges, in part, that HCI lost its rights to the HUSTLER name/mark as a result of making "licensing/royalty" payments to L.F.P., Inc. beginning in early 2005. HCI/Jimmy have denied and continue to deny that "true" licensing/royalty payments were made. However, in the event there is a finding by the Court in that action that HCI lost its rights to the HUSTLER name/mark, pursuant to the *licensee estoppel* doctrine (or any similar doctrine), such loss was a result of deficient and improper legal advice provided to HCI/Jimmy by Defendants, specifically Defendants Cambria and Gumkowski who encouraged and directed Jimmy/HCI to begin making monetary transfers, docketed as "licensing fees" to L.F.P., Inc. in late 2004/early 2005.

In the eviction action, it is alleged that HCI has forfeited its leasehold rights to 411 Elm Street in Cincinnati as a result of a missing and alleged unexecuted lease agreement. It was Defendant Attorneys responsibility to ensure that all of the required documents/leases/paperwork related to the 411 Elm Street property was properly executed and preserved. Instead, in May of 2009, Defendant Attorneys sought to find loopholes in the paperwork related to HCI's leasehold rights in a malicious effort to evict HCI from the 411 Elm Street property and to unnecessarily cause HCI to incur substantial legal fees and expenses.

31. As a result of improper advice and direction provided by Defendants in derivation of their duties to Plaintiffs, Jimmy's employment with Larry/LFP/HUSTLER in early to mid 2009 and his salary and benefits stopped. Jimmy's termination was wrongful and in violation of the law. In the event it is determined that Jimmy's termination was lawful, such determination and resulting losses to Jimmy were as a result of improper and deficient legal advice and representation provided to Jimmy by Defendants, specifically Cambria, related to Jimmy's employment and business relationship with Larry/LFP/Hustler. Jimmy relied on Cambria and Defendant attorneys to protect and advance his interests in all of business and employment dealings and relations. Jimmy has since learned that his interests were not being protected.

32. In recent years, Defendants have breached their duties and client confidences to Plaintiffs by disclosing information obtained from Plaintiffs during the course of the attorney-client relationship between Plaintiffs and Defendants to third parties without consent.

11

33. Over the past year or so, Defendant Attorneys have breached their duties to Plaintiffs, as former clients, by providing legal services, advice and guidance to Larry Flynt, Theresa Flynt, HH-Cincinnati, LLC and/or others related to the opening of a competing Hustler Hollywood retail store at 16-18 E. Seventh Street in downtown Cincinnati. Such action has been designed and targeted to cause adverse economic harm to Jimmy/HCI.

34. Plaintiffs first learned of Defendants' tortious conduct and breach of duty toward Defendants in May of 2009. Plaintiffs initiated legal action for malpractice against Defendants in the Hamilton County Court of Common Pleas in December of 2009. Such claims were voluntarily dismissed without prejudice to re-filing on October 12, 2010.

## Count I – Legal Malpractice / Negligence/ Breach of Fiduciary Duty

35. Plaintiffs restate and incorporate by reference all preceding paragraphs as if fully restated herein.

36. Paul Cambria and the Lipsitz Green firm first formed an attorney-client relationship with Jimmy in 1976-77.

37. Cambria, Lipsitz Green and Defendant Attorneys have provided representation and advice to Jimmy at various times between 1977 and 1998, and regularly between 1998 and 2009.

38. Cambria and Defendant attorneys advised Jimmy and HCI, between 1998 and 2009, as to their legal rights, methods to be pursued, and practices to be followed in connection with their employment, business relations and affairs. Jimmy and HCI

12

relied on this advice and these services and reasonably believed that Defendant attorneys were protecting and advancing their best interests.

39. Cambria and Defendant attorneys failed to fulfill their professional duties and failed to meet the standard of care with respect to representation and services provided to Jimmy/HCI resulting in injury/damages as set forth herein. Cambria and Defendant attorneys owed a duty to Plaintiffs, breached that duty and proximately caused injury/damage. Such negligence was committed in the course and scope of Defendant attorneys' employment with Defendant Lipsitz Green, which is vicariously responsible under the law.

40. Defendants Cambria, Brown, Reina, Deal, Gumkowski have rendered services to Plaintiffs and/or committed acts injuries to Plaintiffs in violation of their fiduciary duty to Plaintiffs as clients and/or as a consequence of Plaintiffs' fiduciary relationship and privity relations with other parties, including but not limited to Larry Flynt, L.F.P., Inc. and/or one or more affiliates of Larry Flynt or L.F.P., Inc. from 1998 through the present.

41. In contravention of their duties, Jimmy's long-time attorney, Paul Cambria, Jr., as well as Defendant Attorneys Reina, Brown, Deal and/or Gumkowski began conspiring and colluding with Larry and his representatives on or before February 26, 2009 to cut Jimmy out and off (financially) from the Hustler Enterprise and to otherwise maliciously cause economic harm/damages to Jimmy (and Hustler Cincinnati, Inc.).

42. Jonathan Brown, Esq., Jeffrey Reina, Esq., Michael Deal, Esq., Joseph Gumkowski, Esq., and Paul J. Cambria, Jr., Esq. have owed a fiduciary duty, as lawyers, to Plaintiffs, as clients (and/or as non-clients in a fiduciary relationship with

13

clients of Defendant attorneys); they have failed to conform to the standard of care required by law and such failure has resulted, and/or is reasonably expected to result, in loss or damage to Plaintiffs well in excess of $75,000.

43. Defendant attorneys, specifically Cambria, have provided legal advice, guidance, and representation to Jimmy in connection with his criminal, business, tax, employment and financial affairs and dealings between 1998 and 2009. Cambria and Defendant attorneys have likewise provided legal advice, guidance and representation to HCI (and its predecessor) in connection with its property rights, tradename/mark rights, marketing, personnel/labor, tax and financial issues, between 1998 and 2009.

44. Based on the legal guidance and representation of Defendant attorneys, specifically Cambria, Plaintiffs have detrimentally changed their position, divesting/transferring millions of dollars of assets, as described herein.

45. Defendants' tortious actions have led to significant and ongoing economic losses to Plaintiffs as described herein.

46. Defendants owed a duty to Plaintiffs to render legal services to Plaintiffs in a competent, unbiased, objective, independent, prudent, and professional manner and to refrain from having conflicts of interest and to refrain from committing acts injurious to Plaintiffs.

47. Defendants have and continue to breach this duty which has and will cause monetary damages to Plaintiffs well in excess of $75,000.

48. At all times (up until approximately May 6, 2009), Plaintiffs reasonably believed that Defendant attorneys and Defendant Lipsitz Green would advance their

best interests, would protect client confidences and would not take action injurious to Plaintiffs' economic, financial or business interests.

49. Plaintiffs reasonably believed at all times that Defendant attorneys and Lipsitz Green provided services to Plaintiffs un-impended by conflicts of interest. Unfortunately, Plaintiffs have learned that Defendants have not always acted in Plaintiffs' best interests while providing mutual representation to Plaintiffs, Larry Flynt and other affiliated entities.

50. Upon information and belief, Defendant attorneys and Lipsitz Green have colluded with Larry, LFP, Flynt Management and other non-party entities, acted with bad faith and malice, to cause harm to Plaintiffs, including but not limited to harm related to transactions and dealings which Defendant attorneys coordinated and orchestrated as counsel for Plaintiffs.

51. Defendant attorneys have breached their legal and fiduciary duties to Plaintiffs in connection with their involvement and participation in the various asset transfers as set forth herein as well as their failure to protect Plaintiffs' property rights and interests.

52. Defendant attorneys have taken action adverse to the interests of Plaintiffs based on contracts and dealings that Defendant attorneys were involved with creating on behalf of Plaintiffs, to include a lease agreement between HCI and non-party Elm 411, LLC.

53. Defendant attorneys and Lipsitz Green have caused past and future economic harm to Plaintiffs as described herein well in excess of $75,000.

**Count III - Tortious/Intentional Interference with Business/Economic Expectancy**

54. Plaintiffs restate and incorporate by reference all preceding paragraphs.

55. Plaintiff Jimmy Flynt had a valid business expectancy with respect to his continued business interests in connection with Hustler Cincinnati, Inc., HH Monroe, Inc., the real property at 411 Elm Street in downtown Cincinnati, his name and coined marketing slogan, the Hustler retail stores, the Hustler Enterprise, his employment with Larry/HUSTLER, his overall future in the Hustler business, including but not limited to the Larry Flynt Revocable Trust. For the reasons stated herein, Defendant attorneys, specifically Cambria, has tortiously, intentionally, and maliciously interfered with Jimmy's and HCI's expectancy, contractual and employment interests and rights causing economic harm to Plaintiffs in excess of millions of dollars.

**WHEREFORE,** Plaintiffs Jimmy Flynt and Hustler Cincinnati, Inc., request the following relief:

1. For Judgment Against Defendants;
2. For an award of compensatory against Defendants individually and/or jointly in an amount to exceed $1,000,000;
3. For an award of punitive damages in excess of $1,000,000;
4. For an award of attorney's fees and costs;
5. For a trial by jury; and
6. For any other relief which this Court sees fit to grant at law or in equity.

Respectfully submitted,
REMINGER CO., L.P.A.

/s/ Robert W. Hojnoski
Robert W. Hojnoski (0070062)
Carrie A. Masters (0083922)
525 Vine St., Suite 1700
Cincinnati, OH 45202
Tel: 513/721-1311; Fax: 721-2553
Email: rhojnoski@reminger.com
cmasters@reminger.com
**Counsel for Plaintiffs**

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all triable issues.

/s/ Robert W. Hojnoski
Robert W. Hojnoski
Carrie A. Masters